JAMES C. KEOUGH *vs.* BOARD OF ALDERMEN OF HOLYOKE
& another.

Hampden.    February 22, 1892. — May 10, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Joint City Convention — Counting of Ballot — Collector of Taxes —
Mandamus — Bond.*

Although the use of the writ of mandamus to try the title to an office is unusual, yet it may be resorted to as the speediest and best method of settling the dispute of two rival claimants of a municipal office.

After two ineffectual ballots of the joint convention of a city council held on January 5, 1892, pursuant to the St. of 1873, c. 154, § 13, to elect a collector of taxes, a third was had, all the members voting, K. receiving fifteen and P. thirteen votes, and the mayor who presided declared K. elected. A dispute arose over the second ballot, in which P. received fourteen, K. ten, and B. three votes, and there was one scattering vote, which the tellers and then the mayor declared to be illegible, and the mayor decided that no choice had been made. Some members thought that the vote was intended for P., and that it should be counted for him. At a joint convention held two weeks thereafter, P. was declared elected a collector of taxes; the convention, without first attempting to remove K. for cause, under the St. of 1873, c. 154, § 13, voting that "the third ballot, being the one which resulted in the choice of K. as collector of taxes, at the meeting of January 5th, be declared void." The board of aldermen refused to accept the bond of K., on the ground that he was not elected to the office, and that P. was elected. *Held*, on a petition for a writ of mandamus brought by K. against the board of aldermen, that the writ should issue declaring P. not elected to the office, and commanding him to refrain from usurping the office and performing the duties, and declaring K. to have been duly elected thereto, and commanding the board of aldermen to consider the bond presented

by him, and to accept or reject it as it might or might not be found satisfactory to them, and in the form required by law.

This court cannot compel the board of aldermen of a city to approve a bond which is required by the Pub. Sts. c. 27, § 124, to be a bond "with sureties to their satisfaction."

PETITION for a writ of mandamus to compel the respondents to accept the bond of the petitioner as the collector of taxes for the city of Holyoke, and not to interfere with him in the discharge of the duties of that office, and to command Daniel Proulx to abstain from the performance of those duties, and not to interfere with the petitioner in the discharge thereof. Hearing before *Knowlton,* J., who, at the request of the respondents, reported the questions of law for the consideration of the full court, the writ to issue if warranted on the facts which appear in the opinion.

*W. H. Brooks & W. Hamilton,* for the board of aldermen.

*W. H. Brooks,* for the respondent Proulx.

*G. M. Stearns & C. T. Callahan,* for the petitioner.

FIELD, C. J.   The use of the writ of mandamus to try the title to an office is unusual, but we are of opinion that in such a case as this it affords the speediest and best method of settling the dispute of two rival claimants of a municipal office.   We have stated the reasons for this opinion in the recent case of *Luce* v. *Board of Examiners,* 153 Mass. 108, and the use of the writ for this purpose is not without authority.   The report finds that all the allegations of the petition were proved.   The material facts are, that at a joint convention of the city council held on January 5, 1892, pursuant to the St. of 1873, c. 154, § 13,* two ballots were had without effecting an election, and that the convention "took a third ballot, on which all the members of the said city council voted, on which last named ballot the whole number of votes cast was twenty-eight (28), of which

* The material portions of this section are as follows: "The city council [of Holyoke] shall, annually, as soon after their organization as may be convenient, elect by joint ballot in convention, a collector of taxes [and other officers], who shall hold their offices respectively for the term of one year, and until their successors shall be chosen and qualified; *provided, however,* that either of the officers named in this section may be removed at any time by the city council for sufficient cause. Vacancies occurring in the above named offices may be filled at any time."

your petitioner received fifteen (15), and one Daniel Proulx received thirteen (13), and that the mayor, who was presiding officer of said joint convention, declared that your petitioner was elected, — all of which proceedings of the said joint convention appear by the records thereof, . . . and that said joint convention dissolved." According to the record, a dispute arose over the second ballot, in which it appears that Daniel Proulx received 14 votes, the petitioner 10 votes, one Richard S. Burns 3 votes, and there was one scattering vote. The tellers reported that this scattering vote was not legibly written, and that they were unable to count it for any person. The mayor also examined this vote, decided that it was not legible, and that no choice had been made, and directed another ballot to be taken, which was done, and is the third ballot, at which the petitioner was declared elected. Some members of the convention thought that the vote was intended for Mr. Proulx, and that it should be counted for him, and that he should be declared elected. The justice who heard the case has found, if it was competent for him so to find, "that the paper should be counted as a ballot, and that the voter who cast it had not legibly expressed his choice." Without considering whether there is any absolute rule of law as to what should be done with a vote of this kind, it is plain that the mayor's decision on the facts was a reasonable one, and that it was for the tellers in the first instance, and then for the mayor, to make the decision. If the name on the vote could not be made out with reasonable certainty, it ought not to have been counted for any person; if the vote was cast by a member of the convention as a vote for a real, and not a fictitious person, it should have been counted in ascertaining the whole number of votes cast. The convention, by proceeding to another ballot, in which all the members voted, assented to the decision of the mayor, and the petitioner, having been elected on that ballot, and having been duly declared elected, and the convention then having been dissolved without taking any action affecting this declared result, the petitioner must be held to have been duly elected to the office. If there could have been an appeal to the convention from the decision of the mayor, none was taken. By the St. of 1873, c. 154, § 13, the officers therein named, of which the collector

of taxes is one, " may be removed at any time by the city council for sufficient cause." The subsequent joint convention, held on January 19, 1892,* at which Daniel Proulx was declared elected a collector of taxes, was not acting as the city council, and it did not attempt first to remove the petitioner from the office for cause, but proceeded to vote that "the third ballot, being the one which resulted in the choice of James C. Keough as collector of taxes, at the meeting of January 5th, be declared void." This was beyond the power of that convention. The result is, that the petitioner has been duly elected to the office of collector of taxes, and that Proulx has not.

The report finds " that the board of aldermen refused to accept the bond of the petitioner for the proper performance of the duties of his office, on the ground that he was not elected to the office of tax collector, and that the respondent Proulx was elected."

---

* The first convention was "Joint Convention, January 5, 1892 "; the second, " Meeting of City Council, January 19, 1892, in Joint Convention." The record of this last convention is as follows:

" The opinion of C. T. Callahan, as city solicitor, upon the matter of the balloting for and election of collector of taxes at the meeting of January 5th, current, was read by the clerk.

" Voted, that the said opinion be not received.

" Alderman Laporte moved that the opinion of William Hamilton, as city solicitor, touching the said matter of the action of the city council in the election of the collector of taxes, be read.

" The mayor suggested that as said matter was not specified in the order providing for the joint convention, that no action could properly be taken thereon except by the unanimous consent of the city council.

" Alderman Laporte observed that perhaps such consent would be obtained, and on the said motion being seconded and no objection being offered thereto, it was put by the mayor and carried.

" The said opinion of City Solicitor Hamilton was read by the clerk, and it was voted that it be received, except that portion of it which reflected upon ex-City Solicitor Callahan.

" A motion was made by Alderman Laporte, and seconded, that the third ballot, being the one which resulted in the choice of James C. Keough as collector of taxes, at the meeting of January 5th, be declared void. The mayor declined to entertain the motion, upon the ground that it was beyond the power of the city council to undo or annul the proceedings concerning the election of the collector of taxes, and that the matter was beyond the jurisdiction of the city council.

" Alderman Higginbottom expressed the same opinion, and claimed that

The records of the board of aldermen of the meeting held on February 2, 1892, show that, " on the motion of Alderman Laporte, it was voted that the bond of James C. Keough, as collector of taxes, be not accepted, as he is not recognized by this board as the legally elected tax collector." At a meeting of the board held on March 1, 1892, it was ordered that the records be " corrected and amended so as to conform to the facts, by inserting in the vote relative to the rejection of the bond of James C. Keough, at the end thereof, the following words: ' And for other reasons.' " And this appears of record. We have not been furnished with any of the ordinances of the city of Holyoke. The case has been argued on both sides on the theory that § 124 of the Pub. Sts. c. 27, is applicable to it, and that, by virtue of the Pub. Sts. c. 28, § 2, the board of aldermen in cities have the powers of selectmen. See St. 1873, c. 154, §§ 20, 24. Section 124 of c. 27 of the Pub. Sts. is as follows: " Every col-

---

the proper tribunal to deal with the question as to the title to the office of collector of taxes was the courts.

" Councilman Miles claimed that the proposed action was in the nature of reconsideration, and could not legally take place until the same number of members were present as at the original meeting.

" Alderman Laporte appealed from the decision of the mayor upon the above motion, and on a roll call for the yeas and nays the said decision was not sustained, the vote thereon being 9 yeas and 18 nays.

" The motion of Alderman Laporte, above referred to, was then put by the mayor and carried on a call of the roll by a vote of 18 yeas against 9 nays.

" C. T. Callahan appeared before the city council at this juncture, and announced that he was the attorney of James C. Keough, and desired to be heard on behalf of his client.

" Alderman Laporte and Councilman Fortier objected to hearing Mr. Callahan, and Alderman Connors stated that he could see no advantage to be gained by the city council from hearing the attorney.

" Mr. Callahan informed the city council that he and his client did not acquiesce in the proceedings of this meeting.

" Voted, on a call of the roll for the yeas and nays, by a vote of 18 yeas against 9 nays, that the vote called ' scattering,' cast on the second ballot for collector of taxes at the meeting of January 5th, current, be counted for Daniel Proulx, and that he, having received fourteen votes . . . besides on said ballot, be declared elected collector of taxes on said second ballot.

" Mr. Callahan announced that he protested on behalf of his client against the action of the city council taken at this meeting respecting the office of collector of taxes."

lector shall give bond to the town, in such sum as the selectmen may require and with sureties to their satisfaction, for the faithful discharge of the duties of his office."

It is not necessary to decide whether the amendment of. the record by the board of aldermen was within their power, or, if it was, whether it was competent for the justice who heard the case to find that there were no other reasons than those mentioned in the first record. We cannot compel the board of aldermen to approve any particular bond, because it must be à bond " with sureties to their satisfaction." As we have held that the petitioner was duly elected, unless he is thereafter removed for cause, it is the duty of the board of aldermen to approve his bond, if it is in such sum as they require, and is with sureties to their satisfaction, and in the form required by law. A writ of mandamus should issue declaring Daniel Proulx not elected to the office of collector of taxes, and commanding him to refrain from usurping the office and performing its duties, and declaring James C. Keough to have been duly elected to the office, and commanding the board of aldermen to consider the bond presented by him, and to accept or reject it as it may or may not be found satisfactory to them, and in the form required by law.                         So ordered.