ATTORNEY GENERAL *vs.* JOHN F. HUTCHINSON & others.

Middlesex.    November 16, 1903. — February 25, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Municipal Corporations.    Elections.*

Under St. 1898, c. 548, §§ 335, 336, 361, a town, which has adopted the use of official ballots for the election of town officers, may, at a meeting held more than thirty days before the next annual meeting, vote to abandon the method of electing selectmen provided by § 335, theretofore adopted by the town, and return to its former method of electing annually three selectmen to serve for one year.

INFORMATION, in the nature of quo warranto, filed by the Attorney General on March 12, 1903, to determine by what authority the respondents Hutchinson, Taylor and Spaulding held the offices of selectmen of the town of Lexington, and praying for an order to set aside their election as such selectmen.

The case came on to be heard before *Morton*, J., and was reported by him for determination by the full court upon the pleadings and the facts reported, such judgment or decree to be entered as the pleadings and the facts should require.

*H. Albers*, for the plaintiff.

*H. G. Allen*, for the defendants.

BRALEY, J. Prior to the enactment of St. 1878, c. 255, towns at their annual meeting elected a board of selectmen whose term of office was for the period of one year. By that act, any town which accepted its provisions might at any annual meeting choose them, so that the tenure of office of each member of the board would be for a term of three years. If for

any reason a town adopting this method desired to return to the old system, it might do so at any annual meeting. Pub. Sts. c. 27, §§ 64–69.

Subsequent legislation revising and codifying the laws relating to elections substantially re-enacted this provision. Sts. 1893, c. 417, § 267 ; 1898, c. 548, § 335, now R. L. c. 11, § 339.

When the town of Lexington at the meeting held in January, 1900, voted to exercise the choice given by these statutes of electing selectmen, and voted, " that at the annual meeting in March of the current year, the town shall elect one selectman for the term of one year ; one for the term of two years, and one for the term of three years, and that at each annual meeting thereafter it shall elect one selectman for the term of three years," it legally decided to abandon the old system of tenure of such officers and adopted the new.

Between the time when towns were given this option within certain limits of regulating the term of office of selectmen, and the date of the vote making the change, the General Court had entered upon a course of legislation by which the method of preparing for and conducting state, city and town elections was radically changed. Sts. 1888, c. 436; 1889, c. 413; 1893, c. 417; 1898, c. 548; R. L. c. 11.

Ballots to be used in voting at state and city elections were to be printed and distributed at the public expense, and the nomination of candidates for office, the preparation, form and delivery of ballots, and the manner of voting, were worked out in great detail.

No provision, however, was made in the first two acts, which referred solely to state and city elections, for regulating the election of town officers, and the method of conducting such an election remained the same as before. The next year, the Legislature by a separate act extended these provisions to town elections ; provided any town desired to accept the act, and make its choice manifest by adopting its provisions, otherwise the method was left unchanged. St. 1890, c. 386. By this statute a change was made in the manner of conducting the election of town officers, only in those towns which duly accepted it.

Under this act it follows that towns must be divided into two classes, those that accept, and, having accepted, must use the

ballot therein prescribed, and towns which did not accept, and remained under the original system.

The town of Lexington, by its vote at the town meeting held February 21, 1891, had accepted the provisions of St. 1890, c. 386, and thereby placed itself in the class of towns to prepare for and conduct the election of town officers in the manner therein provided. And when it voted to make the term of office of its selectmen three years, it exercised this privilege as a town which had used the official ballot in voting for such officers for nearly nine years.

By the act, after it was accepted, and the "system or manner of electing any town officers" had been determined, no return to the former system could be made, unless the meeting at which the change was decided upon was held at least thirty days before any annual town election at which town officers were to be elected, though in towns which still continued under the former system of voting this change as to their office could be made at the annual meeting at which they were to be elected. Sts. 1890, c. 386, § 2; 1898, c. 548, §§ 335, 336, 361.

If the various sections which embrace previous legislation in whole or in part, and which make up the codification of former acts in St. 1898, c. 548, are examined and compared, so far as they relate to the election of town officers, nothing appears that is so inconsistent or repugnant but that full effect can be given to each provision.

The intention of the Legislature is plain. It is important that the voters should know whether a candidate for the office of selectman is to be elected for one or three years, and in towns which use ballots prepared at the public expense, and where the election is conducted in the same manner as state and city elections, some time is necessary to prepare and distribute the ballots before the election takes place.

For this reason, a limit of thirty days before the next annual election was fixed as the time after which the length of the term of officers to be then elected could not be changed; but there is no such requirement in towns that do not use the official ballot.

The town meeting of January 28, 1901, was held more than thirty days before the next annual meeting, and when the town

voted under article two of the warrant, "that at the annual town meeting in March, 1901, the town shall elect one selectman for the term of one year, and in March, 1902, shall elect two selectmen for the term of one year, and in March, 1903, shall elect three selectmen for the term of one year, and thereafter shall annually elect three selectmen for the term of one year, in the manner in which the selectmen have been elected prior to the election of March 5, 1900," it had thereby legally voted to choose its board of selectmen so that the tenure of each member should be only for one year. And the three selectmen thereafter elected would each serve for that period.

At the annual meeting following this action by the town, the respondent, John F. Hutchinson, was elected accordingly a selectman for the term of one year. For reasons not necessary to be stated he afterwards resigned, and on May 20, 1901, at a meeting duly called to fill the vacancy, and under an article in the warrant, "to choose by ballot one selectman to fill a vacancy for the term ending March 1904," he was declared elected a selectman for the term ending March, 1904, and since that time has filled and now claims to hold the office.

The other respondents now in office were each chosen as selectmen for the term of three years.

By the vote of January 28, 1901, which remained unchanged, the town had decided thereafter to elect these officers for the term of one year, and it must be held that the several respondents have no title to the office. It follows that there must be judgment of ouster.

*So ordered.*